**In re James H. ROGERS, Patricia S. Rogers, Debtors.**

**Bankruptcy No. 93–10237–ALB.**

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

Nov. 9, 1993.

Henry C. Custer, Albany, GA, for debtors.

Mark W. Roadarmel, Asst. U.S. Trustee, Macon, GA, for U.S. Trustee.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On May 24, 1993, the court held a hearing on the Assistant United States Trustee's Motion to Dismiss pursuant to 11 U.S.C.A. § 707(b). At the conclusion of the hearing, the court took the matter under advisement to permit the parties the opportunity to submit briefs on the issue of whether the husband-debtor's United States Naval Retirement benefits are included when determining disposable income of the Debtors even though the benefits are exempt. The court finds that even though the benefits are exempt, they are included when determining the disposable income. Therefore, the court holds that allowing the Debtors to continue under Chapter 7 would be a substantial abuse pursuant to § 707(b) of the Bankruptcy Code.

On March 26, 1993, the Debtors filed a Chapter 7 petition. The Debtors' schedules reveal gross monthly income of $3,232.97. This includes $987.00 in naval retirement benefits. The Debtors have unsecured debts scheduled in the amount of $34,389.46. These unsecured debts are almost entirely credit card purchases. The schedules also show $43,485.54 in secured claims. There are no priority debts.

According to Schedule I—"Current Income," the husband-debtor's monthly gross income from his employment is $1,928.33, and his net monthly income is $1,335.95. The wife-debtor's gross monthly income is $1,261.43, and her net monthly income is $910.00. As stated before, the Naval Retirement Benefits are $987.00 per month. Schedule J—"Current Expenditures" states that the Debtors' monthly expenses are $2,179.00. Under § 1325(b)(2), the "disposable income" excluding the naval benefits is $66.97 and including the naval benefits is $1,053.97.

On April 6, 1993, the Trustee filed a "Motion of United States Trustee to Dismiss Case pursuant to 11 U.S.C.A. § 707(b)." The Trustee's basis for his § 707(b) motion was that the Debtors had sufficient disposable income to pay a significant portion of the total scheduled debt under a Chapter 13 plan. On April 26, 1993, the Debtors amended their schedules, eliminating the $987.00 in naval benefits from the income schedule "I"—"Current Income of Individual Debtors" and including it under Schedule "C," "Property Claimed as Exempt."

The Trustee contends that the husband-debtor's naval benefits of $987.00 per month should be included when determining disposable income even though it is exempt. However, the Debtors contend that since the naval benefits are exempt, they should not be included when calculating the disposable income. The Debtors argue that, under the totality of the circumstances, granting them relief would not be a substantial abuse of the provisions of Chapter 7.

Section 707(b) of the Bankruptcy Code provides:

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C.A. § 707(b) (West 1993).

Before granting the Trustee's motion, the court must make two findings. First, the court must determine that the Debtors' debts are primarily consumer debts. Second, the court must find that the relief sought under Chapter 7 is a "substantial abuse" of the Bankruptcy process. The Debtors begin

with the presumption in favor of granting relief. Thus, the Trustee has the burden of proving "substantial abuse."

■ The first issue before the court is whether the debts are primarily consumer debts. Section 101(8) of the Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for personal, family, or household purpose;" 11 U.S.C.A. § 101(8) (West 1993). " 'Primarily' means 'for the most part.' " *In re Kelly*, 841 F.2d 908 (9th Cir.1988) (citing Webster's Ninth New Collegiate Dictionary 934 (1984)). In reviewing the Debtors' schedules, the secured debts amount to $43,485.54, and the unsecured debts amount to $34,389.46. The unsecured debts represent the amount owed to fifteen creditors. These unsecured debts are all credit card purchases. The unsecured debts are consumer debts. Five claims make up the secured debts. $16,938.70 of the secured debts represent purchase money security interest in a riding lawn mower, television, and a Ford Ranger. These purchase money security interests are consumer debts. Without even addressing the mortgage and the mechanic's lien, the debts of the Debtors are primarily [1] consumer debts.

■ Next, the court must address whether the granting of relief for the Debtors would be a substantial abuse. The Bankruptcy Code does not define substantial abuse. "Virtually every court has concluded that the single most important indicator of substantial abuse is the presence of enough disposable income to realistically enable the debtor to repay a significant portion of his debts through a Chapter 13 plan." *Matter of Woodhall*, 104 B.R. 544 (Bankr.M.D.Ga.1989) (citations omitted).

Some courts attach such great significance to this factor that it becomes the only one considered. *See In re Struggs*, 71 B.R. 96, 97 (Bankr.E.D.Mich.1987) (If a debtor can repay a meaningful part of his unsecured debt in a Chapter 13 plan, his Chapter 7 petition should be dismissed.).

This court will stop short, however, of adopting the position that the ability to

repay debts through a Chapter 13 plan is the only determining factor. Substantial abuse should be determined on a case-by-case basis after considering the totality of the circumstances. *In re Ploegert*, 93 B.R. 641, 642 (Bankr.N.D.Ind.1988); *In re Kress*, 57 B.R. 874, 878 (Bankr.D.N.D. 1985).

*Woodhall*, 104 B.R. at 546 (footnote omitted).

■ The factors to be considered in the totality of the circumstances were set out by the *Woodhall* court in a footnote. *Woodhall*, 104 B.R. at 546 n. 2. The factors provided in the footnote were:

(1) Whether the debtors have a likelihood of sufficient future income to fund a Chapter 13 plan which would pay a substantial portion of the unsecured claims;

(2) Was the Bankruptcy petition filed due to sudden illness, calamity, disability, or unemployment;

(3) Did debtor incur cash advances and make consumer purchases far in excess of the ability to repay;

(4) Is debtor's proposed family budget excessive or unreasonable;

(5) Do debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition;

(6) Was the petition filed in good faith;

*Id.* (citing *In re Strong*, 84 B.R. 541, 545 (Bankr.N.D.Ind.1988), and *In re Kress*, 57 B.R. 874, 878 (Bankr.D.N.D.1985)).

The Debtors' naval benefits are exempt pursuant to Ga.Code Ann. § 44–13–100(a)(2)(B). This section states:

(a) In lieu of the exemption provided in Code Section 44–13–1, any debtor who is a natural person may exempt, pursuant to this article, for the purposes of bankruptcy, the following property:

(2) The debtor's right to receive:

(B) A veteran's benefit;

Ga.Code Ann. § 44–13–100(a)(2)(B) (Michie 1982 & Supp.1993).

---

1. " '[P]rimarily' suggests an overall ratio of consumer to non-consumer debts of over fifty per-

cent." *Matter of Booth*, 858 F.2d 1051, 1055 (5th Cir.1988).

■ The primary factor in determining whether substantial abuse exists is the ability of the debtor to repay the debts out of future disposable income. The question then becomes whether the Husband Debtor's naval benefits, which are exempt, can be included when calculating disposable income. Disposable income as defined by 11 U.S.C.A. § 1325(b)(2).

> For purposes of this subsection, 'disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C.A. § 1325(b)(2) (West 1993).

Several courts have held that pension benefits are income for the purposes of a Chapter 13 plan. *Regan v. Ross*, 691 F.2d 81 (2d Cir.1982); *In re Wood*, 23 B.R. 552 (Bankr. E.D.Tenn.1982). The Sixth Circuit in *Regan* found that when Congress enacted the Bankruptcy Code, it intended for Chapter 13 to be available not only to wage earners but also pension and welfare recipients. Although the debtor's pension was subject to an "anti-assignment" agreement, the court found that the pension benefits were includable as income to fund a Chapter 13 plan.

In *In re Wood*, 23 B.R. 552 (Bankr. E.D.Tenn.1982), the court found that the debtor's pension plan was an ERISA–qualified plan. The *Wood* court reasoned that the anti-alienation language in ERISA plans brings them within § 541(c)(2) and excludes them from the property of the estate. *Wood*, 23 B.R. at 555. The Supreme Court, in *Patterson v. Shumate*, —— U.S. ——, ——, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992), reached the same conclusion. However, the court in *Wood* did hold that the benefits from an ERISA plan were property of the Chapter 13 estate and could be used to fund the plan. *Wood*, 23 B.R. at 556.

Earlier this year, a bankruptcy court for the Northern District of Illinois [2] found that exempt income is included when determining "disposable income" pursuant to § 1325(b)(2). In *Schnabel*, the Chapter 13 trustee and an unsecured creditor objected to the confirmation of the debtor's Chapter 13 plan. The objection's basis was the debtor's failure to include exempt income, pension income and social security benefits, when calculating the disposable income. The court noted that neither it nor the parties were able to cite case law that had spoken directly on whether exempt status of the debtor's income enters into the "disposable income" calculation. However two bankruptcy courts and one commentator have held without analysis that the disposable income calculation excludes exempt income. *Schnabel*, 153 B.R. at 815 (referring to *In re Tomasso*, 98 B.R. 513 (Bankr.S.D.Cal.1989); *In re Red*, 60 B.R. 113 (Bankr.E.D.Tenn.1986); Note, *The Disposable Income Tests: An Attempt Toward Uniformity*, 4 Bankr.Dev.J. 221, 233 n. 86 (1987)).

The *Schnabel* court found that § 1325(b)(2) does not exclude exempt income. In reaching this conclusion, the court relied upon the plain meaning of Bankruptcy Code § 1325(b)(2). *Schnabel*, 153 B.R. at 815. "[W]ithout an express or even implicit limitation in § 1325(b)(2) on 'income' relating to its exempt status, this court will not impose one." *Id.* at 816.

The Debtor's reliance on the exemption statutes is misplaced in the context of Chapter 13 plan confirmation proceedings. The Court does not dispute the Debtor's contention that exemptions apply in both Chapter 7 and Chapter 13. *See* 11 U.S.C. § 103(a). However, their significance is greatly diminished in a Chapter 13, where the fresh start is protected by the debtor's retention of non-disposable income rather than by exempt assets. *See Collier, supra*, ¶ 1300.81. Legislative history indicates that in a liquidation exemptions are meant to "protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will

2. *In re Schnabel*, 153 B.R. 809 (Bankr.N.D.Ill. 1993).

not be left destitute and a public charge." H.R.Rep. No. 95–595, *supra,* at 126, *reprinted in,* 1978 U.S.C.C.A.N. at 5787, 6097. *See also* S.Rep. No. 65, 98th Cong. 1st Sess. 7–8 (1983); *Auto Owners Ins. v. Berkshire,* 225 Ill.App.3d 695, 167 Ill.Dec. 1100, 1103, 588 N.E.2d 1230, 1233 (1992) ("the purpose of the [Illinois] exemption and pension statutes [ ] are to provide support for the debtor and his family and to prevent them from becoming public charges."). A Chapter 13 debtor, on the other hand, may keep all its assets, exempt or not, in return for repayment of creditors out of future income. Where the Debtor is assured of an income sufficient to meet his basic needs, his fresh start is not imperiled by requiring him to make payments to creditors out of his social security and pension benefits, especially where, as here, it is those benefits that he proposes to use to fund his plan.

Allowing the Debtor to use his exempt income to attain Chapter 13's broad discharge, without the corollary requirement to use it to pay creditors as much as he is able, would contravene the express purpose of the statute—namely, that the debtor make payments under a plan. "The purpose of Chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period." H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6079. *See also*

*Matter of Smith,* 848 F.2d 813, 816–17 (7th Cir.1988).

*Schnabel,* 153 B.R. at 817–18.

The court in *Schnabel* found that disposable income includes exempt income. This court agrees with the *Schnabel* court's finding. Thus, the Debtor's Naval Retirement Benefits, even though exempt, are included when determining disposable income. The Debtors have enough disposable income to repay all their unsecured debts in about 34 months. After considering the totality of the circumstances, this court finds that allowing the Debtors to continue under Chapter 7 would be a substantial abuse pursuant to § 707(b) of the Bankruptcy Code.

An order will be entered in accordance with this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion issued this date, the Motion of the United States Trustee to Dismiss this case pursuant to § 707(b) of the Bankruptcy Code is granted if the case is not converted to a case under Chapter 13 of the Bankruptcy Code within 20 days of the date of this order.

SO ORDERED this 9th day of November, 1993.